Good morning, your honors. May it please the court, Kevin Martin for the MBTA. With me I have Brian Burgess, and with the court's permission I would like to save two minutes for rebuttal. You may have it. Your honors, I'd like to start, as I think we must, with a question of subject matter jurisdiction. No, no, no, no. I think you misread my decision. The cause of action pleaded here was under 1981. If there is no federal cause of action, then, and there's no other basis for federal jurisdiction, then of course the case has to be dismissed. But you didn't raise the Benton issue earlier. Maybe it's appropriate to apply it now. But you don't have a lot of time. Could you address, please, the question of whether you've waived any objection to Judge Young's initial restriction on your ability to present your case in his original default order? Sure, your honor, and we believe we did not waive an objection to that. Why not? Well, there were numerous times during the trial in which we attempted to... No, no, you didn't object when he entered the order. That's correct, your honor. There was no objection raised at that point. Why not? I can't speak to why not, your honor. All I can say is that during the trial we attempted to put in evidence on numerous occasions and were repeatedly instructed by the court that it could not be put in because it was not found in the affidavits. And these were not minor issues. They were points that went directly to the heart of the case. And so I point the court, as one example, to page 529 of the Joint Appendix. As the court knows from the briefing at the appellate level of this court, one of the major points made by the plaintiffs has to do with Mr. McClellan's involvement in the investigation. And the point is made, well, why was Mr. McClellan, the head of the Green Line, involved in this investigation? Well, we attempted to ask Mr. McClellan on the stand, what are the normal procedures in the instance where there's an altercation between two employees? And there was an objection on the basis that he did not explain what the normal procedures were in his affidavit and the testimony was excluded. And I could go on. There were numerous examples of this. Could you stay with that one for a second? Maybe I'm parsing it too closely. But is there a difference between objecting to the sanction and saying that's why I should be able to put on this testimony, on the one hand, and, on the other hand, acquiescing to the sanction but wanting to put it on because you think it's not covered by the sanction And preserving the latter may not preserve the former. When we look at, and I think I already have, JA 529, can we discern which it is that's going on? A counsel who has acquiesced all along to the sanction, continually acquiesce, or a counsel who is actually objecting to the sanction at trial as you're required to do? Right. I guess the question, Your Honor, is are you required to object to that kind of sanction in the abstract pre-trial when it's first issued? Or do you have the ability to wait until trial to see what the practical effect of it is to try and put evidence in at trial? And I'm assuming the latter, giving you the benefit of the assumption of the latter and asking at trial, did you object on those grounds that the sanction was just what we did? So, for example, Your Honor, we did not go back and ask Judge Young to revisit the sanction and to lift it. What we did do on numerous occasions was attempt to put in evidence that was not in the affidavits, and we were repeatedly prevented from doing so by plaintiff's objections which were sustained. The second version of the objection, that sounds like you're objecting to whether the sanction which you were acquiescing in covered it. And, again, Your Honor, I'm not sure that we acquiesced. We did not ask for reconsideration of the sanction. We didn't file something called a motion for reconsideration initially. But with respect to each objection, if you were not asking them to revisit the sanction, then the only objection could be the sanction didn't cover it, right? It seems like a binary. Yeah, I'm not sure I'm following that, Your Honor, but I guess in my mind what it comes down to is are you requiring... He's now purporting to enforce the sanction. I could say, you know what, you have no right to enforce this sanction at all. This is an improper sanction. Alternatively, I could say, though I'm not challenging that, this sanction does not apply here. Right, and so with that distinction, we never said we don't think the sanction applies to this testimony. What we tried to do was put in testimony notwithstanding... But you also didn't say that you couldn't have the sanction. You just sort of objected and said, let me put something in. I thought you had, before trial started or with the first witness, didn't you raise the issue with Judge Young about lifting the sanction order to let you go forward? And he said, no, I'm not going to do that. Am I wrong? Your Honor, I'll check the record. I'm not remembering the colloquy you're describing. All I can say is that there were lots of occasions where we thought it was unfair that we were under the sanction. We tried putting in evidence. Every now and then he would actually let us put a little bit in. But more often than not, on some very key issues, he prevented us from doing so. The reason why it might matter, at least in part, is once the sanction is set at the outset of the trial, the plaintiff is going to have a view of what kind of evidence they're going to have to confront. And that's going to be different than if that sanction is up for grabs throughout the whole trial. Right? That's certainly correct, Your Honor. So that's why it matters whether you first objected to the particular sanction that was imposed, or the sanction that set the rules of the game up front, and cast some doubt on whether you can solve the problem by then later down the road, once you start seeing how they framed their case, and say, well, wait a second. Now that I see you framed your case around that sanction, I don't like it anymore. That's concerning as a strategy. But even if you could do it, you would at least want the objection to be quite clear that now we're revisiting the sanction, if only so that the plaintiff could then make a fair argument and rebuttal, which is, wait a second. This is a problem if you're going to change the rules. Well, I think that's fair, Your Honor. However, I note in this case that the way it actually played out in the trial was that, aware of the fact that we were bound by the affidavits, it was plaintiff who greatly expanded the scope of the case beyond what was described in the complaint, to which our affidavits were responsive. If you look at the evidence which went in the trial, hardly any of it, and particularly on the issue of the hostile work environment, hardly any of it is described in the actual complaint to which our affidavits were responsive. So that gave you yet another good grounds for opposing the sanction. It did, Your Honor. The question is, did you? What I see when I look through it is I see counsel, I know you didn't try it, but trial counsel asked for a witness. Plaintiff pops up and says, objection, that wasn't in the affidavit. The judge looks at trial counsel and trial counsel says, I think it was in the affidavit. Well, do you have it? No, I'll check at a break. And then they come back and on another occasion, well, maybe it wasn't in the affidavit. So you skip the question. That's not doing a job of preserving an objection. And again, Your Honor, I guess I'm not sure that you need to ask the trial court judge to reconsider the evidentiary sanction after it's been entered in order to preserve the issue for appeal. No, but at some point when a judge says, I'm going to impose this sanction on you, I'm going to limit you to what you submit, and you just say, okay, here's what I submit, and you never say to the judge, you can't do that, you've got a problem in terms of preservation. And there were instances even before trial, Your Honor, in which we did push at the boundaries of the order. So, for example, there was the motion for clarification issue, which came up, in which we sought to put in documents which weren't attached to the affidavit. That's worse for you. I'm just afraid about that. Isn't it? I mean, it certainly shows that we could have filed a case. It shows that you're talking about, and she's clarified what we're saying, and then you get the clarification, and now you're accepting the clarification too. I mean, obviously you're not at trial. I'm just saying that hardly shows that you were vigorously resisting the idea of the sanction, that you're seeking for a clarification that once you get, you then accept. Your Honor, I think more could have been done to vigorously resist. I think if the question is what is the minimum you must do to preserve the issue for appeal, I don't think we needed to move for reconsideration after it was initially entered. If you could turn to an issue you did preserve an objection to, which is the addition of the amended, the new theory. On that one, when we look at the jury verdict that came back, you've got two theories put to a jury, one you objected to, one you didn't, and then they come back with a general verdict. I think you need to show that the verdict could have been on the one that you objected to. Given that the dollar amount of the verdict exactly equaled to the dollar, the damage claim that was in the preamendment, what's your theory for allowing us to find that the jury verdict could have been affected by adding in that additional claim should we decide that claim was added too late? Sure. Your Honor, under Gillespie, I'm not sure we need to get that far, but if we do, what I would suggest is that there is an essentially agreed damages form that went into the jury. I don't have the appendix page number for the second provided to the court. You can easily imagine a situation in which the jury looks at a page which essentially describes the stipulated damages, and no matter which theory they found for the plaintiff on, it says, well, the party stipulated as to what the damages were, and therefore that's the damages that we'll award, whether it's for the wrongful termination or for the late added hostile work environment claim. My time has expired. I can talk about our argument that we should receive judgment as a matter of law as to... We'll rely on your briefs. Okay. Thank you, Your Honor. Your Honor, good morning. Christian, better for Ms. DiManchi. Your Honor, as most of you know from reading the briefs, this case concerned a claim by Ms. DiManchi, a Haitian woman, for continual racial harassment in a position while working at the MBTA. I think the evidence at trial was pretty overwhelming. It was her testimony, the testimony of Virginia Davis, although brief, Perry Spencer, which was also brief. I do think that Ms. DiManchi covered all the activities that happened. Another very important part of the case, though, was not so much Ms. DiManchi's testimony, which was very important in laying everything out, but it was the lies of the MBTA. I think the lies of the MBTA happened, I don't want to say with every single witness, but many of the witnesses. If you look at Mr. McClellan, when he comes up and he testifies, you know, I ask him about the document with the attachments. Does he have it? Does it pertain to the absences? And he can't really say anything. And Judge Young... Part of the reason he couldn't say some things was he had his hand tied behind him by the judge.  No, Your Honor. Did you ever do anything at trial that you wouldn't have done but for the fact you knew their hands were tied behind their backs, or at least one of them? Yes, Your Honor. The judge told Mr. McDermott that he could put the whole letter in. When I said that, I knew it could come in. I knew there was information in there about her absences, and if it came in, I was going to go after McClellan on that. And they didn't put it in because they knew it was hurtful to them. And the jury knew it when I said it, okay? I mean, I just think the lies that they said just, you know, they went on and on. You know, with McClellan, I don't have to get into the fact that he, you know, directed the investigation after that particular incident with Ms. DeManchi. But if we look at that incident, Mr. Foster comes in right near the end of the trial. I think he's the final witness, may have been, right, the final piece of testimony. Counsel. I'm sorry. You're arguing a point that I just told your brother we'd take on briefs, which is his claim that he's entitled to a directed verdict. Judge Kayata was attempting to get you to address the issue of the effects of Judge Young's preclusion order. There's been a suggestion that the MBTA did not properly preserve its objection. But then the question is, well, did you rely in presenting your case on Judge Young's order? Were you prejudiced somehow by, if we were to think they didn't get a fair trial, have you suffered any prejudice? If you're asking did I suffer prejudice through the order, I don't think there was any prejudice suffered respectfully by either side. And the reason I can tell you that is, you know, they produced 15 affidavits, hundreds of documents. And when I saw it, and it's in my opposition, the first thing I said is, how come there's nothing in here about discrimination? This is a discrimination case. I was shocked. I was absolutely shocked that they did not put that in the affidavits. You know, with respect to Mr. McCloskey, he said... ...has some merit to it. And they put in the affidavits, and then he removed the default. Right. And I understand that, Your Honor, and I'm not disagreeing with that. But what I am saying is, counsel for the MBTA did not put all the information in the affidavits which he should have put in. And that's what I saw. Mr. McClellan, he either could have a statement in there saying, hey, I never... I'm sorry. This is merely to remove a default. These preclusion orders are most unusual. And the default seems to have been caused by a clerical error. Well, Your Honor, maybe it's a clerical error for a big corporation like, or, excuse me, entity like the MBTA. I think it's more than a clerical error. I think they weren't paying attention. And what Judge Young did was not unfair. He said, hey, as to your affirmative case, put in what you want to say. And this is what I'm saying. You know, counsel should have just put something in there, general things, by Mr. McClellan saying there was no racial discrimination. At the time a complaint is filed, you have to put in your entire case when all you have to respond to are the notice pleading allegations of the complaint? Well, Your Honor, in this case, I would say, yes, I just didn't think it was that hard. And the other reason I'll further that up is if you look at their briefs, you say, look, if there was no water, we would have done more. It's like, okay, what did they say? Well, Mr. McClellan could have said, oh, I didn't make the statement, and maybe Mr. Foster could have said something. There's nothing else. There's no list of these witnesses that we would have brought in to do this or that. I think the question we're trying to get at is this, is if they had been allowed to put in the additional evidence that was kept out by the sanction, how, if at all, would that have affected the way in which you would have prepared or tried the case any differently than you did if they had put in that stuff? I mean, Your Honor, if you're asking me and they came in after, the answer would be no, because I prepared the way I prepared. You know, what other information they were going to put in based on their brief, I don't think it would have hurt me. I think it would have helped me. I think if McClellan came in and said that, he would have been hurt. I think if Foster came in and said that, he would have been hurt. You know, the other testimony, I don't even think it was really that relevant. And that's why I keep saying we're looking at the sanction, but what I'm saying is let's just look at what the sanction stopped. I don't think it stopped much. I think they put in a lot. You know, 15 affidavits, that's a lot. Hundreds of documents, that's a lot. And what I'm trying to say is what was kept out, I don't know. I looked at their brief, those two things as to those two people. McClellan said that, he was going to be in trouble. Foster said it, he was going to be in trouble. And on top of that, just the lies that continued in that case. The MBTA's case just became so much more difficult because they were lying. It has nothing to do with the sanction. They just plain lied. Counsel, there is the question they've raised about whether the hostile environment claim was actually made. And if it was not actually made, whether they were caught sort of flat-footed, especially given the sanction order that now they had to address something that wasn't in the complaint and they were caught by surprise. Two responses to that, Your Honor. First of all, I do think the complaint did say racial harassment in it. But if we put that to one side, the reason Judge Young allowed the hostile work environment claim to be alleged is he said, there's so much evidence in here as to a hostile work environment. It wasn't me saying, oh, I want to allege this claim. He just says, it is out there. And it was. I mean, it was just out there. They just let all this come in, come in, and come in. Can you give a chronology of how it becomes clear that it's in the case? So you say one fact that makes it clear it's in the case is that you used the words racial harassment in the complaint. Yes. What's the next time, aside from that there's lots of evidence that you say supports it, supports a claim like that, what's the next thing that happens? Anything at trial that happens that makes it clear it's in the case? Well, I think Michelle DeManchi makes it clear at the case. I forget, is there an instruction or something that's referred to when the jury gets it? Well, I think there is an instruction in the jury instructions.  No, Your Honor. I think they do object to the addition of the claim. When? At trial. I believe at trial they did, Your Honor. And I'm trying to remember when. I think when we were up with the judge, they were saying they didn't want it in. That's my recollection. But the judge did do it. And the judge did it because he said the evidence is in. And it wasn't. I mean, you know, what happened to Ms. DeManchi was a continuous thing by a lot of people. Your intention is that it's not a new claim because it was in the complaint? No, it wasn't a complaint. And then there was evidence at trial. So that's why I'm saying when they say, hey, there's no racial harassment, I'm like, it's right in there. I didn't see any problem with that. But then at trial, I mean, it just kept coming and coming and coming. And I think that's what Judge Young said. He said, my God, there's so much of this stuff. I see no problem with it because all the facts are there. It wasn't like, oh, by the way, I'd like to put this claim in too. He's like, no, there's evidence here. So that's why I'm going to do it. And I thought what he did was justified. That's how I saw it, Your Honor. And I do think it was justified because there was ample evidence of a hostile work environment. I don't think anybody can really say anything otherwise. And with respect to the sanction, did it hurt the MBTA? I'd say absolutely not because, you know, this is a case we were putting on. You know, they saw it. They dealt with it. They had the same witnesses. So I never understood how the MBTA was trying to say we're prejudiced by this claim. If we try the case again, you know, hopefully that won't be required. But I don't think anything would change. I mean, they put in their evidence. They did. Thank you, Mr. Trombetta. Thank you very much, Your Honor. Thank you, Your Honors. The Court's clearly interested in the chronology and the preservation questions here. So I want to walk through a little bit more what happened. How about dealing with his you weren't hurt by the sanction order? Right. And I don't see how he could not have been hurt by the sanction order. And put aside the specific examples that we raised in the brief, the questions that were attempted to ask, and objections were sustained. If you look at the way the case unfolded, the complaint has none of the allegations concerning the hostile work environment claim. And what about the racial harassment? Well, it says racial harassment, but you can't put racial harassment in a complaint and get past Iqbal and Twombly just based upon that. You have to have factual allegations which support that. None of the facts or alleged facts that they relied upon at trial are found in the complaint. Did you move to dismiss? We had no basis to move to dismiss. There was no count that was clearly a hostile work environment count. And if you look at Judge Young's statements during trial, it's clear that Judge Young did not believe this was a hostile work environment case until the very final day of the trial. If you look at, for example, Joint Appendix 491, there was some discussion about it. It's a Section 1981 claim, right? And the allegation is racial harassment. What else could that mean? It's wrongful termination based on race, Your Honor. And one of the allegations is racial harassment. And racial harassment can sometimes be used as background evidence to help support a race-based termination claim. If you look at the way they described their hostile work environment case in their brief to this court, none of the facts they rely upon are in the complaint. And that's what we were tied to by Judge Young's order. And, again, it's clear that Judge Young thought this was only a wrongful termination case because when the parties tried getting into allegations and supposed evidence of racial harassment that had nothing to do with the termination, he said that can't come in. That has nothing to do with the termination. So, again, if you look at page 491 in the Joint Appendix, other matters don't concern us unless they bear this termination. Judge Young, Joint Appendix 695 to 696, I will say that the hostile work environment standing alone does not give rise to this cause of action. This was not a hostile work environment case. But when that evidence started coming in because it wasn't enough evidence. Did you submit to the jury instruction on the hostile work environment claim? So this came up at the charging conference before closing arguments were delivered. And at that point, MBTA counsel said that hostile work environment should not be in this case. It should be focused only on the termination. Mr. Trombetta has made a point that the evidence that you were not allowed to put in didn't help you and actually would have hurt you if you had put it in. What's your best example of a piece of evidence that you actually tried to put in a trial, but you were not allowed to put it in by the sanction that would have helped you in the case? So, for example, this is the 529 example that we emphasized in the brief we cited a few times. There we, and I described this already to the court, we attempted to have Mr. McClellan explain what the ordinary procedures were when there's a fight between people, two workers, and we were not allowed to question Mr. McClellan about that. So that's the same one, 529? It's the same one, and it's something that they emphasized in their brief, so they clearly think it's important, too. Thank you, Your Honors. Thank you.